UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARRELL JEROME BURNSIDE,

                Petitioner,

-vs-                                    Case No.  8:06-cv-352-T-17TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS, ATTORNEY GENERAL,
STATE OF FLORIDA,

                Respondents.

_____/

## **ORDER**

      The cause is before the Court on Darrell Jerome Burnside's 28 U.S.C. § 2254

petition for writ of habeas corpus.  Burnside challenges his conviction and sentence entered

by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida in case

no. 98-10834.

Procedural History

      Burnside was convicted as charged in case no. 98-10834 of armed kidnaping and

armed robbery after a jury trial held February 16-17, 2000. On April 3, 2000, he was

adjudicated guilty in accordance with the verdicts and sentenced as a prison releasee

reoffender to concurrent prison terms of life. Burnside appealed his trial-based judgment,

arguing that the state trial court committed reversible error by not conducting a *Faretta v. California,* 422 U.S. 806 (1975), inquiry.

On May 1, 2002, the state district court of appeal affirmed the conviction and sentence. *Burnside v. State*, 825 So. 2d 377 (Fla. 2d DCA 2002)[table]. On June 19, 2002, Burnside's motion for rehearing was denied.  On July 2, 2002, Burnside sought further review of the silent affirmance in the Florida Supreme Court for which jurisdiction did not lie under state procedural rules. On April 28, 2003, his improper petition was dismissed on jurisdictional grounds.[1]

Burnside filed a pro se petition for writ of certiorari review dated June 16, 2003, attacking the state supreme court's dismissal order and the state district court's 2002 affirmance in his direct appeal. On October 6, 2003, the Supreme Court denied the petition without elaboration in case no. 03-5044. *Burnside v. Florida*, 540 U.S. 884 (2003)[table].

Burnside filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 dated October 16, 2002, in which he raised six claims of proposed ineffective assistance of his trial counsel. Burnside filed a motion to amend claiming his trial attorney was ineffective and "took the side of the prosecution." (Resp. Ex. 7 V 1 R 74-89.) By nonfinal order rendered (V 1 R 90-177), the court summarily denied ground six.

Following the state's response indicating an evidentiary hearing was in order on grounds two, four and five, (V 1 R 200-01) and the state's ensuing response asserting ground one was without merit and an evidentiary hearing was needed on ground three, (V

---

[1] *Burnside* cited *Grate v. State*, 750 So. 2d 625 (Fla. 1999); *Jenkins v. state*, 385 So. 2d 1356 (Fla. 1980), decisional law making clear jurisdiction does not lie to review silent decision such as *Burnside.*

2 R 269-307), the postconviction court rendered a nonfinal order summarily denying the first rule 3.850 ground. (V 3 R 311-460)

Burnside was afforded collateral counsel for the hearing on the remaining grounds. On May 28, 2004, evidentiary proceedings were held on grounds two, three, four and five of Burnside's rule 3.850 motion. On August 31, 2004, the postconviction court rendered a final order denying the grounds that were the subject of the evidentiary hearing.(V 3 R 467-485)

Burnside appealed the denial of postconviction relief. Following briefing, on December 9, 2005, the state district court per curiam affirmed without written decision in case no. 2D04-4205. *Burnside v. State*, 922 So. 2d 200 (Fla. 2d DCA 2005)[table]. Following denial of rehearing, the mandate issued February 14, 2006.

Burnside timely filed a pro se 28 U.S.C. § 2254 petition dated March 2, 2006.

STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it

must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## Discussion

## Ground One

Burnside contends the state trial court failed to honor what he describes as an unequivocal request to proceed pro se. This ground is procedurally barred. Subsequent to denial of his successor counsel's motion to withdraw, Burnside moved to discharge said counsel. Just before trial commenced, he confirmed he wished to withdraw his motion seeking to appeal the denial of his motion to discharge counsel. Burnside waived and abandoned his ground by acceptance of assigned successor counsel's continued representation on his behalf. *See, Moore v. State*, 778 So. 2d 1054, 1057 (Fla. 4th DCA 2001)(deeming waived defendant's objections to denial of motion to discharge counsel where he did not renew his motion to discharge in the intervening six months before trial, and/or at any time before trial ended).

Claims that are procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier,* 477 U.S. 478, 495-96 (1986). Cause must ordinarily be something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995), and allegations of cause are subject to default. *See Edwards v. Carpenter*, 529 U.S. 446 at 453 (ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted).

Burnside cannot show cause where he chose to abandon his ground. Any allegation of cause is now procedurally barred by the two-year limitation of rule 3.850, *see Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.)(recognizing and applying two-year bar of rule 3.850), *cert. denied*, 498 U.S. 834 (1990), and the state's successive petition doctrine. *E.g., Foster v. State*, 614 So. 2d 455, 458 (Fla. 1992); *Zeigler v. State*, 632 So. 2d 48, 51 (Fla. 1993).[2]

Even if Burnside could show valid cause, Burnside cannot avoid his default. He does not allege and meet the prejudice component of the *Wainwright v. Sykes* test. Moreover, Burnside does not qualify for the fundamental miscarriage of justice exception. He has no new and reliable evidence of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995).

---

[2] *See also, e.g., Bolender v. Singletary*, 60 F.3d 727, 729 (11th Cir. 1995)(applying procedural bar based on state's successive petition doctrine).

Even if the claim is treated as exhausted, Burnside does not meet his burden under the AEDPA. Burnside does not show the state decision was an unreasonable application of established Supreme Court precedent.

Under the Sixth Amendment, a criminal defendant has a constitutional right to waive counsel and represent himself. *Faretta*, 422 U.S. at 834-36. The right to self-representation must, however, be asserted in a clear and unequivocal manner. *See id.*, 422 U.S. 806, 819 (1975). Unlike the Sixth Amendment right to counsel, which is in effect until waived, the right to self-representation is not effective until asserted. *Stano v. Dugger*, 921 F.2d 1125, 1143 (11th Cir.) (en banc), *cert. denied sub nom. Stano v. Singletary,* 502 U.S. 835(1991*); Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir.1986), cert. denied sub. nom. Dugger v. Dorman*, 480 U.S. 951 (1987). Furthermore, in contrast to the right to counsel, an individual's right to self-representation can be waived by failure to timely assert the right or by subsequent conduct giving the appearance of uncertainty. *United States v. Hutchins,* 989 F.2d 496 (4th Cir. 1993).

In Burnside's case, it is objectively reasonable to conclude that the state court was not obliged to advise him of his right of self-representation under *Faretta.* Burnside claims he made an unequivocal request to discharge counsel and represent himself. However, it can be reasonably concluded Burnside's remark, "Put me down for pro se" (Resp. Ex. 1, V 3 T 318) made after his counsel's motion to withdraw was denied was not an unequivocal request to represent himself. He did not specifically tell the trial court he no longer wanted any substitute counsel and instead desired to represent himself at trial. Courts should not "quickly infer that a defendant unskilled in the law has waived counsel and has opted to

conduct his own defense." *See Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982)(en banc)(citing *Brewer v. Williams,* 430 U.S. 387, 404 (1976) (courts must indulge every reasonable presumption against waiver of counsel).

That Burnside did not desire to represent himself is illuminated by his subsequent actions. Burnside apparently moved to discharge his counsel and represent himself. However, at the February 11, 2000, hearing on his motion, Burnside, although complaining about his counsel, did not make an unambiguous request to represent himself. The day of commencement of trial, Burnside's counsel informed the trial court Burnside wanted to withdraw a pro se submission in which Burnside sought to appeal the denial of his motion to discharge counsel based on irreconcilable differences between counsel and Burnside. Upon inquiry by the trial court, Burnside confirmed he wished to withdraw his motion. Having done so, Burnside embraced Sandler's [his attorney's] continued representation on his behalf and proceeded to trial with counsel without asking to represent himself. Under the circumstances, it is objectively reasonable to conclude Burnside did not want to waive his right to counsel.[3]

---

[3] To the extent Burnside complains he was not advised he could represent himself when his counsel's motion to withdraw was denied, such a claim does not present a federal question. Determination of whether a Florida trial court has complied with state procedures governing a motion to discharge appointed counsel is solely a matter of state law. Moreover, a claim that the state court did not inform him he could proceed pro se, without an accompanying showing he unequivocally made such a request, is tantamount to a claim that the right of self-representation can only be waived upon a knowing and intelligent waiver. Such argument was rejected in *United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1994)("As the constitutional basis of the right of self-representation does not require a knowing and intelligent waiver of that right, the district court need not advise a defendant of her right to proceed pro se prior to assertion of such right."); *see also, United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15, 16 (2d Cir. 1965), *cert. denied*, 384 U.S. 1007 (1966)("...if notice of the right had to be given, the task of administering the overriding constitutional policy in favor of granting a lawyer to every person accused of a serious crime would become unduly treacherous")(citations omitted); *State v. Craft*, 685 So. 2d 1292 (Fla. 1996)(trial court did not err in failing to inform defendant of his right of self-representation during hearing on his motion to discharge counsel).

Thus, even if Burnside could show it is objectively unreasonable to conclude he did not make a clear and unequivocal request to represent himself prior to trial, nonetheless, any such determination would not assist him in his quest to overcome his state judgment. Undeniably, Burnside subsequently withdrew his motion alleging irreconcilable difference, and in so doing, made apparent his Sixth Amendment right to counsel was not waived.[4] It follows Burnside was not denied the Sixth Amendment right of self-representation. Moreover, even under this Circuit's precedent, a waiver of the right of self-representation may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself. *Brown,* 665 F.2d at 611; *see also, Dorman*, 798 F.2d at 1367 (defendant who initially requests to waive counsel may subsequently abandon or waive the waiver, *citing Brown*, 665 F.2d at 611). Even if defendant requests to represent himself, the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether. *Brown*, 665 F.2d at 611.

In Burnside's case, it is objectively reasonable to conclude Burnside abandoned and thereby lost the right to represent himself by not maintaining a timely and unequivocal request to proceed pro se when he embarked with counsel on the trial waters. *See Horton v. Dugger*, 895 F.2d 714 (11th Cir. 1990) (right to self-representation may be lost if not timely asserted; *cf., United States v. Young*, 287 F.3d 1352 (11th Cir. 2002)(defendant's request to proceed pro se was untimely where not made before the jury empaneled). The silent affirmance in Burnside's direct appeal resulted in a reasonable application of federal

---

[4] Burnside had no constitutional right to hybrid representation. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)(although defendant has no constitutional right to "hybrid" representation, trial court has discretion to permit such arrangement).

law as clearly established by the Supreme Court and a reasonable determination of the facts in light of the record.

Ground one does not warrant federal habeas relief.

### Ground Two

Burnside contends that his counsel proceeded to trial with incomplete discovery and failed to advise the trial court the prosecution had fabricated evidence. He claims a photopack used for identification purposes was updated to include a recent photo of him, and he asserts a wrong date is on the back of the photo display. In summarily denying this claim, the state trial court found:

> As to ground 1, Defendant claims that the first time he and counsel viewed the original photo lineup was on 16 February 2000, the first day of trial, and that instead of including the picture shown to the victim on 19 June 1999, the day of the offense, the photo lineup included a picture of Defendant that was taken 17 November 1999. (See motion attachment to interim order, attached.) He also claims that counsel said that he would conduct further investigation into the photo lineup, but that he did not. He further claims that he contacted the private investigator used by counsel to request information about the investigation of the photo lineup, and that a letter Defendant received from the investigator shows that an investigation never took place. (See amended motion attachment to interim order, attached.)

> The photograph of Defendant used in the photopak in the instant case was taken in 1997 and bears identification number 97-067671. (See single photograph attachment to 9 September 2003 response, attached.) This photograph was in position #4 in the six-picture photopak shown to the victim in the instant case. (See photopak attachment to 9 September 2003 response, attached.) Upon being shown the photopak, the victim immediately identified person #4 as the person who tied her up and robbed the store. (See supplemental investigation report attachment to response, page 5, attached.) **No relief is warranted on ground one**.

> It is therefore

> **ORDERED** that ground 1 of Defendant's motion for postconviction relief and motion to amend motion for postconviction relief is **DENIED**. . . .

. . . .

(V 3 R 313-14)(emphasis in original).

The State's response reflects that the photopak display had not been updated. The postconviction court stated this in rejecting Burnside's factual assertions regarding the photo display based on the state record, and Burnside's allegations do not overcome the presumption of correctness of the state court's findings. 28 U.S.C. § 2254(e)(1). With respect to Burnside's underlying issue, the Supreme Court in *Neil v. Biggers*, 409 U.S. 188, (1972), held that the central issue to be decided regarding witness identification is whether, under the totality of circumstances, the identification was reliable even though the confrontation procedure was suggestive.

Moreover, factors to consider when determining the likelihood of misidentification include: opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Id.* at 199-200. Burnside does not show that not one reasonably competent attorney could concluded that the trial court was not obliged to accept Burnside's underlying theory of an altered photo display, or, alternatively, that even if proven would not require suppression of the identification evidence. At least one reasonably competent attorney could conclude the victim had sufficient opportunity to view Burnside at the time of the crimes, and her identification was reliable.

In light of the victim's sufficient opportunity to view him at the time of the crime, and the compelling corroborating evidence linking him, including that the shoes he was wearing

upon his subsequent arrest matched the description given by the victim (V 3 T 228), it is objectively reasonable to conclude the identification evidence was reliable. Accordingly, Burnside cannot show there was any reasonable probability of a different outcome had counsel performed as proposed.

Ground two does not warrant federal habeas corpus relief.

### Ground Three

Burnside faults his trial counsel for foregoing use of Ogletree as a potential alibi witness for the defense and for not securing records of a furniture company. Burnside had a full and fair opportunity to establish the underpinnings for his claim at the state evidentiary hearing and he failed to do so. In denying his claim, the postconviction court held, in relevant part:

> As to ground 2, Defendant claims trial counsel failed to depose and call defense witness Stacy Ogletree, and to investigate and/or subpoena furniture store records and/or witnesses. He specifically claims that Stacy Ogletree and the two furniture store employees who came to his residence the morning of the offenses could have provided an alibi. He also claims he signed a receipt for furniture being removed from his garage and that this record could also have been used to support his alibi.

> Trial counsel testified that he spoke with Ms. Ogletree and that she said she could not provide an alibi for Defendant at 8:30 a.m. on the date of the offense. (See transcript, pages 12 14, attached.) In addition, Defendant had received a copy of an investigative report in which it was reported that Ms. Ogletree had stated that furniture rental company personnel came to Defendant's house at about 9 or 10 o'clock. (See State's Exhibit 5, 20 October 1999 transcript of interview, unnumbered page 3, attached.)

> Defendant testified that he was with Ms. Ogletree at his home and that the furniture rental company personnel came there at approximately 8:30 a.m. to pick up furniture. (See transcript, page 48, attached.) On cross examination, the State inquired whether Ms. Ogletree was at the hearing; Defendant said she was not. (*See* transcript, page 72, attached.) Postconviction counsel advised the Court that he had subpoenaed her to

attend the hearing and made efforts to facilitate her attendance, to no avail. (See transcript, pages 87 - 89, attached.) The Court concludes that trial counsel and his investigator interviewed Ms. Ogletree and determined that her testimony would not have established an alibi for Defendant at trial.

. . . .

(Resp. Ex. 7, V 4 R 470-473).

When counsel makes an informed choice between reasonable alternatives, counsel will not be regarded constitutionally deficient merely because of tactical decisions. *Griffin v. Wainwright*, 760 F. 2d 1505, 1514 (11th Cir. 1985), *vacated on other grounds*, 476 U.S. 1112, *cert. denied*, 476 U.S. 1123 (1986). "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689 *accord, Waters v. Thomas,* 46 F.3d 1506, 1522 (11th Cir. 1995) (en banc) ("Three different defense attorneys might have defended Waters three different ways, and all of them might have defended him differently from the way the members of this Court would have, but it does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance.").

The fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffective assistance. *Foster v. Dugger*, 823 F.2d 402, 406 (11th Cir. 1987), *cert. denied*, 487 U.S. 1241 (1988). Burnside does not set forth a sufficient basis showing that not one reasonably competent attorney could have concluded at the time that the witness and proposed records would not furnish an alibi defense and might even prove harmful.

-12-

The claim fails scrutiny under the prejudice prong of *Strickland*. Burnside did not show that the proposed testimony would have credibly established an alibi. Even collaterally, he could not secure her cooperation; nor did he show the records existed when counsel attempted to locate the records. Moreover, Burnside did not establish the proposed witness or evidence would have furnished an alibi for him at the precise time of offense. In view of compelling identification testimony of the victim, it is objectively reasonable to conclude there was no reasonable probability of a different outcome had counsel performed as Burnside proposes.

Ground three does not warrant federal habeas corpus relief.

Ground Four

Burnside charges that as a result of counsel's purported ineffectiveness, the prosecution was permitted to provide a fictitious reason to use a peremptory strike on a prospective juror. Burnside, afforded evidentiary development, failed to establish his claim. In denying this ground, the postconviction court found, in relevant part:

> As to ground 3, Defendant claims trial counsel failed to object to the prosecution's fictitious allegation to use a peremptory strike to dismiss a prospective black juror. He specifically claims that counsel failed to address this issue with the court through a Neil inquiry, and had that juror been allowed to be a juror, the outcome of the proceedings would have different.[FN]3

> Defendant refers to juror 2, Wendi Blake, a black female. The State introduced the transcript from the date of jury selection, which shows that trial counsel requested that the Court inquire about a "race neutral" reason, and the Court did so. (See state's exhibit 2, pages 30 - 31, attached.) The State responded that the juror had worked for the Public Defender's office and the Court said "Okay. Sounds good to me." Trial counsel then asked whether the Court had found that the reason provided was a race- neutral reason. (See state's exhibit 2, page 31, attached.)

A *Neil* inquiry consists of (1) a timely objection by defense and a request for a race-neutral reason, (2) a court inquiry of the striking party, and (3) a facially race-neutral reason and belief by the Court that the reason is not pretextual. *Jeffries v. State*, 797 So.2d 573 (Fla. 2001). Counsel made such an inquiry, the Court asked for a race-neutral reason, and the State responded that the juror had worked for the Public Defender, which the Court accepted.

In his motion, Defendant points to the fact that nowhere during voir dire did the juror state that she had worked for the Public Defender. (See motion, page 15, attached.) Defendant

> [FN]3The Court mistakenly stated in its second interim order that Defendant argued that had that juror been excluded, the outcome would have been different. (See second interim order, page 3,attached.)

testified at the evidentiary hearing that when he brought that fact to trial counsel's attention, trial counsel told him that "[it] wasn't a debatable [sic] issue right now; we need to go on with the jury selection." (See transcript, page 53, attached.)

The State introduced notes used by the prosecutor during voir dire. (See State's exhibit 2, pages 90 - 91, attached.) The prosecutor testified that she wrote notes during voir dire "slanted across the side of the paper" and that she wrote "PD Hillsborough County" for juror #2. (See State's exhibit 2, page 91, attached.) Postconviction counsel stated that he had first-hand knowledge that the "slanted writing" was the prosecutor's practice during voir dire. The prosecutor also testified that she had asked jurors to speak up, and she believed the court reporter missed the reference to the Public Defender's office and Hillsborough County. (See transcript, page 92, attached.)

Though trial counsel was not successful in having the Court conclude that the State had not provided a race-neutral reason, the fact is he did raise a *Neil* inquiry on Defendant's behalf. Even had trial counsel objected to the statement that the juror had worked for the Public Defender, the State could have provided a race-neutral reason that the juror had worked for an attorney who represented clients accused of crimes.[FN]4 (See State's exhibit 2,

> [FN]4State's witness Samantha Ward testified that the Public Defender's Office employed Wendi Camille Blake in 1996 and 1997, a black female. (See transcript, pages 96 - 97, attached.)

pages 18-19 and 24, attached.) The prosecution's voir dire notes are highly persuasive that a statement was made that the juror had worked for the Public Defender's office, notwithstanding the fact that the transcript does not contain such a statement. Moreover, this is consistent with Defendant's allegation that counsel said at the time that "he knows what Ms. Blake said," referring to voir dire. (See motion attachment to interim order, page 15, attached.) Defendant does not satisfy prong 1 or prong 2 of *Strickland* as to ground 3. No relief is warranted on ground 3.[FN]5.

> [FN]5The State notes in its written argument that this was an issue which could have been raised on appeal, *citing Lightbourne v. State*, 471 So. 2d 27 (Fla. 1985). (*See* argument, page 2, attached.) In that case, however, the defendant did not raise an ineffective assistance of counsel claim as Defendant does here, but claimed he was denied an impartial jury trial due to the "prosecutor's use of peremptory challenges" as to two (2) black jurors. *Id.*,. at 28.

. . . .

(Resp. Ex. 7, V 4 R 470-473).

Burnside does not overcome the presumption of correctness of the factual determinations of the postconviction court. § 2254(e)(1). Nor did he establish that counsel was constitutionally obliged to object to be reasonably effective.

The claim also fails under the prejudice prong. The postconviction court did not credit Burnside's collateral testimony in support of his theory of a fictitious explanation by the prosecutor. Burnside did not establish the trial court would have been required to reject the prosecutor's strike. There was no reasonable probability of a different outcome had counsel objected as Burnside proposes.

Ground four does not warrant federal habeas corpus relief.

Ground Five

Burnside charges that counsel used coercive tactics to cause him to waive his right to testify. This claim has no merit.

-15-

Burnside waived his right to testify, after the state trial court assured itself of his awareness of his right to take the stand. By electing not to testify, having such awareness, Burnside waived and abandoned any claim that he was denied the constitutional right to testify in his own behalf. *See e.g., Stewart v. LaGrand*, 526 U.S. 115, 120 (1999)(petitioner waived claim that execution by lethal gas violated Eighth Amendment by choosing to be executed by lethal gas rather than lethal injection).

Burnside elected not to testify with record awareness of the right to testify in his own behalf, as the trial court made clear. He cannot avoid his own waiver by his claim of omission where he elected not to testify with awareness of such right.

Burnside's claim fails upon AEDPA review. A claim that counsel has prevented a defendant from taking the stand and offering his or her testimony is appropriately raised as a claim of ineffective assistance of counsel. *United States v. Teague*, 953 F.2d 1525 (11th Cir. 1992) (en banc). A defendant must establish both the deficiency prong and the prejudice prong of an ineffectiveness claim to gain relief where he claims counsel prevented him from offering testimony in his own behalf. *Nichols v. Butler*, 953 F.2d 1550 (11th Cir. 1992) (en banc). The state decision on Burnside's charge against counsel was neither contrary to nor an unreasonable application of *Strickland* .

Afforded an opportunity to develop his claim, Burnside failed to do so. In denying this claim the postconviction court found, in relevant part:

> . . . Defendant claims trial counsel failed to allow him to testify by using coercive tactics to make him waive his right to testify. He specifically claims that counsel misinformed him that if he testified, the prosecution would be able to introduce evidence that he had been convicted of attempted murder and robbery and that the jury would automatically convict him of the pending

charges. He claims that counsel should have known that prior convictions cannot be used against defendants who testify.

He further claims that had he testified, the jury would have known he did not have gold teeth and was 5'7" and that this would have persuaded the jury that he was not the perpetrator described by the victim as having gold teeth and being 5'3", and that the outcome would have been different.

The Defendant testified as follows:

Q. Now, did you think about that, though, before this conversation with Judge Padgett? Had you been thinking about going in this trial, I'm not going to be testifying?

A. Not at all. As a matter of fact, Mr. Sandler visit with me on the 13th, which the trial date was set for February the 14, 2000, and we discussed that matter all night.

Q. And what was the decision?

A. After he explained about the black and white issue and prior conviction of Attempted Murder, I decided not to take the stand just on those issues alone. (emphasis added)

(See transcript, pages 56 - 57, attached.)

The Defendant acknowledges that he thought the race issue would be a "big issue" in his case, and trial counsel's reasoning seemed logical to him at the time. (See transcript, pages 57-58,attached.)

During cross examination, Defendant acknowledged that the decision not to testify was his:

Q. Isn't it true that he gave you his thoughts on the matter; his advice, but the decision was ultimately yours, Mr.Burnside?

A. Yes, it was, but when Mr. Sandier indicated that, you know, we got a black victim - I mean, a black defendant and a white victim and an all white jury, you make the call.

Q. Okay. But - but you had indicated it was your decision?

A. It was my decision not to take the stand, yes, ma'am; but under pressure, though.

-17-

(See transcript, page 77, attached.)

Counsel testified that he advised the Defendant that if he took the stand to testify, the prosecution would be able to ask how many prior felony convictions or crimes involving dishonesty the Defendant had, and that while the ultimate decision was the Defendant's, that he advised the Defendant not to testify. (See transcript, page 19, attached.) The State also introduced evidence that at trial, the Defendant told the Court that it was his decision not to testify. (See State's Exhibit #3, and transcript, pages 32 - 33, attached.)

While Defendant may have interpreted the disadvantages pointed out to him by trial counsel Sandier as "pressure," Defendant does not specify any statements by counsel which provide a basis for this Court to conclude that counsel intentionally coerced the Defendant to not testify, and in doing so was deficient. (See transcript, pages 46 — 83, attached.) As counsel noted, "[...] I have to point out to him, of course, all the disadvantages [of testifying] ." (See transcript, page 21, attached.) Defendant does not satisfy prong 1 of *Strickland.* No relief is warranted . . . . .

(Resp. Ex. 7, V 4 R 475-478)

The postconviction court credited counsel's testimony, and Burnside does not overcome the presumption of the state court's credibility determinations. § 2254(e)(1). Nor does he overcome the strong presumption that counsel's advice regarding the decision not to testify was in the exercise of reasonable professional judgment. *Strickland*, 466 U.S., at 690. Counsel's testimony supports the objectively reasonable determination there was no coercion behind Burnside's decision.

The claim can also be disposed of on the prejudice prong. Counsel addressed on the victim's cross-examination and during his closing remarks, the matter of the victim's description in relation to Burnside's appearance, and Burnside does not show that there was any reasonable probability of a different outcome if he had testified on his own behalf. The decision resulted in a reasonable application of *Strickland* under either prong.

Ground five does not warrant federal habeas corpus relief.

Ground Six

Burnside faults his counsel for not objecting on grounds that a juror was purportedly asleep during closing argument. Afforded evidentiary development, he did not establish his factual underpinnings for his claim. In denying this ground, the postconviction court stated:

> . . . .Defendant claims trial counsel failed to notify the court that juror #5 was asleep during closing arguments. He specifically claims that had counsel brought this to the attention of the court, Defendant would have received a mistrial.
>
> Trial counsel testified that Defendant did point out juror #5 to him during the State's closing argument, but that counsel did not think the juror was asleep. (See transcript, pages 17 - 18, attached.) Counsel also felt that given that this was during closing argument, not the evidentiary portion of the trial, and the potential embarrassment to the juror, that disrupting the trial was not worth raising the issue. (See transcript, page 18, attached.) The Court concludes that this was a tactical decision which counsel had to make quickly, and that Defendant does not satisfy prong 1 of *Strickland*. No relief is warranted. . . . .

(Resp. Ex. 7, V 4 R 478)

As a threshold matter, Burnside did not factually establish any juror was asleep. Moreover, counsel did not want to embarrass the juror, and it was an objectively reasonable strategic choice for counsel to forgo an objection under the circumstances. It was objectively reasonable to forego an objection, as the trial court had discretion to conclude the juror was not sleeping.

The claim can be disposed of on the prejudice prong. Burnside's testimony was not credited and in any case did not rule out that the juror was simply listening with his eyes closed. *See, e.g., Foraker v. State*, 731 So.2d 110 (Fla. 5th DCA 1999) (allegations juror was sleeping during trial were not sufficiently specific and egregious to require trial judge to conduct investigation into misconduct, where defendant's daughter acknowledged she

was not sure whether juror was sleeping or merely had her eyes closed, and judge noted juror would occasionally close her eyes, but it was clear to him that juror was listening and was aware of proceeding).

Burnside did not establish factually that the subject juror actually slept through "critical" trial testimony and that counsel, and for that matter the trial judge, ignored egregious behavior in that regard. Burnside does not point to anything in the record which would indicate that trial judge who kept vigil over the trial blissfully allowed a juror to sleep as vital evidence was laid out before his jury, and it cannot be so presumed.[5]  Accordingly, even if trial counsel had performed differently with regard to the juror, there was no reasonable probability of a different outcome.

Ground six does not warrant federal habeas corpus relief.

### Ground Seven

Burnside faults the postconviction court for not honoring his motions seeking a default in his rule 3.850 proceedings on grounds the state did not timely respond as directed. Subject matter jurisdiction does not lie to address this claim. Defects in state collateral proceedings cannot form the basis of federal habeas corpus relief. *See Wright v. Angelone,* 151 F.3d 151, 159 (4th Cir. 1998)(citation omitted).

His claim goes to issues unrelated to the cause of his detention and does not state a basis for habeas corpus relief. His allegations do not undermine the validity of the state conviction. *See Spradley v. Dugger,* 825 F.2d 1566 (11th Cir. 1987)(state court's failure to

---

[5] Federal courts recognize and apply the presumption judges know and follow state law." *Glock v. Singletary,* 65 F.3d 878, 898-900 (11th Cir. 1995)(citing, *Espinosa v. Florida,* 505 U.S. 1079 (1993)).

hold hearing on inmate's motion for postconviction relief and failure to attach relevant portions of record did not undermine validity of inmate's conviction, went to issues unrelated to cause of detention, and did not state basis for habeas corpus relief).

Ground seven does not warrant federal habeas corpus relief.

Final Comments

Not only was Burnside afforded evidentiary development on various claims, Burnside had ample opportunity to allege all his factual assertions in his rule 3.850 motion, and his failure to do so is attributable to his own lack of diligence. Burnside is now barred by 28 U.S.C. § 2254(e)(2) from seeking evidentiary development on any allegation not timely pled in state court.[6]

Moreover, even if  § 2254(e)(2) does not preclude a federal evidentiary hearing, Burnside nonetheless is not automatically entitled to a hearing. It would still be appropriate to deny him a hearing if a  hearing would not assist in resolution of his claims. In order to obtain an evidentiary hearing, the petitioner must demonstrate he would be entitled to habeas relief on his claim if his factual allegations are proven. *See Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002). This determination is circumscribed by the AEDPA's highly deferential standards. *Id.*, 279 F.3d at 960 ("In the post AEDPA era, we do not conduct an

---

[6] Any new factual assertions not pled in his rule 3.850 motion and raised at his evidentiary hearing and on collateral appeal are now procedurally barred on independent and adequate state procedural grounds of rule 3.850's time limit and the state's successive petition doctrine. If a petitioner asserts new allegations of ineffective assistance of counsel that were not timely and properly raised in state court, they may not be considered by this Court. *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992); *Jackson v. Herring,* 42 F.3d 1350, 1355 (11th Cir.), *reh. denied*, 51 F.3d 1052 (11th Cir. 1995)(petitioner's ineffective assistance claim was not raised in state court and was procedurally barred). *Tower v. Phillips*, 979 F.2d 807 (11th Cir. 1992)(federal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law, citing *Coleman v. Thompson*; in addition, federal courts may not address claims that have not been presented in state court if the state court would have found the claims to be procedurally defaulted, unless petitioner is able to show both cause and prejudice resulting therefrom).

independent review of claims that have been addressed on the merits by the state courts. The relevant standard for federal habeas review of such claims is governed by 28 U.S.C. § 2254(d)(1)....") In Burnside's case, he is not entitled to federal relief on any of his claims.

Accordingly, the Court orders:

That Burnside's petition is denied.  The Clerk is directed to enter judgment against Burnside and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on February 27, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Darrell Jerome Burnside